**CONSOLIDATED TEXAS FINANCIAL and Blaine, Knapp & Associates, Inc., d/b/a Texas Insulators, Appellants,**

v.

**Harry Donald SHEARER, Jr., and Shirley Jean Shearer, Royce Galyen and Martha Galyen, Appellees.**

**No. 2–86–160–CV.**

Court of Appeals of Texas, Fort Worth.

Oct. 14, 1987.

---

**478**

Arter, Hadden & Witts, and Stuart E. Blaugrund, Dallas, for appellants.

Richard L. Griffin, Fort Worth, for appellees.

Before FARRIS, KELTNER and LATTIMORE, JJ.

## OPINION

KELTNER, Justice.

In this appeal, Blaine, Knapp & Associates, Inc., d/b/a Texas Insulators (Texas Insulators) complains that the trial court erred in awarding punitive damages because the plaintiffs were awarded equitable relief rather than actual damages in the judgment.

We disagree and affirm the judgment of the trial court.

The facts giving rise to this case are typical of situations that occur all too frequently in the less fortunate neighborhoods of our state. Texas Insulators sold storm windows and doors to Harry and Shirley Shearer (the Shearers), and assigned its interest in the resulting retail installment contract and mechanic's and materialman's lien contract to Consolidated Texas Financial, Inc., a related business entity.[1]

Consolidated Texas Financial foreclosed on the mechanic's and materialman's lien after the Shearers defaulted on the retail installment contract. The home, valued at $55,000, was subsequently sold at a foreclosure sale to third parties for $2,512.30.

The Shearers brought suit, pleading for alternate grounds of recovery under common law, the Texas Home Solicitation Act, the Texas Deceptive Trade Practices Act, and the Consumer Credit Code. Specifically, the Shearers contended that Texas Insulators did not furnish them with a copy of the contracts, that the contracts did not contain the statutory right of cancellation, and the contracts were backdated by Texas Insulators. The Shearers prayed for alternative relief due to these violations. First, they sought to rescind the contracts because they were null and void under the statute. Alternatively, they sought money damages for the loss of their home.

The Shearers also alleged that the contracts were void because of misrepresentations that the contracts would not in any way endanger their rights to use and possession of their house. As a result, they sought a declaration that the trustee sale was null and void. Alternatively, they sought the fair market value of their equity interest in the home. The Shearers also brought suit under the Texas Consumer Credit Code, alleging that the note was accelerated in such a way as to charge usurious interest. On this ground, the

---

1. Consolidated Texas Financial, Inc., was defendant in the trial court. However, it did not appeal from the trial court's judgment. The only points of error on this appeal concern the judgment against Texas Insulators relating to punitive damages.

Shearers prayed for statutory damages, including reasonable attorney's fees and prejudgment interest.

The Shearers also sought exemplary damages and enhanced damages under the Texas Deceptive Trade Practices Act.[2]

In the jury's answer to special issues, the jury found the elements of each cause of action except for the usury contention. As a result, the Shearers were allowed to choose between accepting the equitable relief of declaring the trustee sale null and void, and quieting title to their home in them, or damages the jury found in the amount of $36,288. The Shearers chose the equitable relief, but also requested that the trial court grant punitive damages in the amount of $20,000 found by the jury.

The trial court granted judgment for the equitable relief requested and awarded $20,000 in punitive damages and attorney's fees.

■ Texas Insulators brings three points of error. In their first two points of error, Texas Insulators complains that the trial court erred in awarding punitive damages because there was no award of actual damages and alternatively that the exemplary damages were not reasonably proportioned to the actual damages awarded.

However, Texas Insulators contends that punitive damages were not available to the Shearers because they chose equitable relief over actual damages. Texas Insulators admits that the punitive damage award would stand if the Shearers had elected actual damages over equitable relief.[3]

There is authority which at first glance appears to support Texas Insulators' position. *Doubleday & Co., Inc. v. Rogers*, 674 S.W.2d 751, 755 (Tex.1984). However, the greater weight of authority supports the awarding of exemplary damages, in some instances, when equitable relief is granted, even though no actual damages are awarded. *Nabours v. Longview Sav. & Loan Ass'n*, 700 S.W.2d 901, 905 (Tex.1985); *New*

*Process Steel Corp. v. Steel Corp.*, 703 S.W.2d 209, 215 (Tex.App.—Houston [1st Dist.] 1985, writ ref'd n.r.e.); *Fillion v. Troy*, 656 S.W.2d 912, 915 (Tex.App.—Houston [1st Dist.] 1983, writ ref'd n.r.e.); *Russell v. Truitt*, 554 S.W.2d 948, 955 (Tex. Civ.App.—Fort Worth 1977, writ ref'd n.r. e.).

Exemplary damages serve to deter and punish a wrongdoer, as well as other potential wrongdoers. *Hofer v. Lavender*, 679 S.W.2d 470, 474 (Tex.1984). As a result, Texas courts have always focused on the defendant's conduct in assessing punitive damages. *Wright v. Gifford–Hill & Co.*, 725 S.W.2d 712, 714 (Tex.1987); *Alamo Nat. Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex.1981).

In this case, Texas Insulators asks us to shift the focus from their conduct to the plaintiffs' choice of remedy. This we decline to do. Texas courts do not deny exemplary damages simply because the action is equitable rather than legal. *Nabours*, 700 S.W.2d at 905. We find that the Shearers' choice of an equitable remedy rather than actual damages did not preclude them from collecting punitive damages found by the jury.

Texas Insulators argues that two Texas Supreme Court cases dictate that the Shearers cannot recover punitive damages under the facts of this case. Specifically, Texas Insulators cites *Nabours*, 700 S.W. 2d 901, and *Doubleday*, 674 S.W.2d 751. Both cases are distinguishable.

In *Nabours*, the Supreme Court was confronted with a fact situation in which a savings and loan institution wrongfully foreclosed on a piece of property. In answers to special issues, the jury found that Nabours had suffered no actual damages, but awarded Nabours $126,200 in punitive damages in addition to attorney's fees. The Supreme Court held that the jury's answer of "0" to the actual damage issue negated any right to exemplary damages.

---

**2.** A violation of the Home Solicitation Transaction Act is a deceptive trade practice in addition to those practices delineated in Chapter 17, Subchapter E, Business and Commerce Code. TEX.

REV.CIV.STAT.ANN. art. 5069–13.03(e) (Vernon 1987).

**3.** Appellant's brief, page 7.

However, the Supreme Court indicated that its holding might have been different if the jury had found some equitable relief or some actual damages. Specifically, the Supreme Court stated:

> *Our holding in this case should not be confused with an absolute refusal to allow punitive damages in a case where equitable relief is had.*
>
> ....

Indeed, in the instant case the Nabours chose to seek actual damages only in the form of "loss of market value, if any, on the Plaintiff's home as a result of the conduct, if any, of the Defendant, Metropolitan Savings & Loan Association...." The jury returned an answer of "–0–" to the damage issue. Perhaps if the Nabours had not so limited the jury's consideration of actual damages, an adequate damage finding would have been made. In the instant case there is no *finding of actual damage by the jury* to support an award of punitive damages. Therefore, the court of appeals properly reversed that portion of the judgment of the trial court.

*Nabours,* 700 S.W.2d at 905 (emphasis added).

In the instant case, the jury found actual damages on two theories of recovery. The jury also answered issues which justified the granting of equitable relief. As a result, the *Nabours* opinion supports our holding that exemplary damages may be recovered when equitable relief is granted and the jury finds actual damages.[4]

In *Doubleday,* the Supreme Court was confronted with a libel case where no actual damages were recovered. The plaintiff sought punitive damages and argued that since he had established a cause of action for libel per se, damages were presumed. No equitable relief was sought by the plaintiff. Unlike the plaintiff in *Doubleday,* the Shearers sought equitable relief and a finding of actual damages was made by the jury. The *Doubleday* decision is not applicable to our fact situation.

In a recent case, the Supreme Court clarified the reason for requiring actual damages as a prerequisite for exemplary damages. *Wright,* 725 S.W.2d at 714. The first rationale for the rule is that the law will not punish wrongful conduct in the absence of injury. (Here, injury has been proven and established by the jury's answers to special issues.) The second rationale is that actual damages are used as a measuring stick to determine if the exemplary damages are the product of "passion" rather than reason. *Wright,* 725 S.W.2d at 714. (Here, the jury found the precise amount of actual damages in their answer to special issues.)

The two rationales for requiring actual damages have been fulfilled in this case. As a result, we overrule Texas Insulators' first point of error.

■ In its second point of error, Texas Insulators contends that the award of punitive damages was not reasonably proportioned to the actual damages found by the jury. Texas Insulators bases this contention on the same premise it brought in the first point of error—that the Shearers were not awarded any actual damages.

As discussed above, no actual damages were awarded due to the Shearers' selection of cancellation of the foreclosure sale. However, the jury did find the Shearers were damaged in the amount of $36,288.

Texas courts have long held that punitive damages must be reasonably proportioned to actual damages. *Alamo Nat. Bank v. Kraus,* 616 S.W.2d at 910. In *Alamo,* the Texas Supreme Court outlined five factors to be considered in determining whether an award of punitive damages is reasonable. These factors are (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; and (5) the extent to which such conduct offends a public sense of justice and propriety. *Id.* at 910. In reviewing the five factors, it is obvious that Texas courts concentrate on the conduct of the wrongdoer.

---

**4.** The majority opinion in *Nabours* was attacked by a strong dissent, which would have allowed the recovery of punitive damages when equitable relief was granted.

In reviewing the record before us, we find there is ample evidence of wrongdoing. The jury found that Texas Insulators knowingly misrepresented the nature of the lien contract and retail installment contract, and that documentation did not include the necessary language required by the Texas Home Solicitation Act. More importantly, the jury found that Texas Insulators backdated both the lien contract and the retail installment contract. This was an attempt to "end run" the three day cancellation time period mandated by the Texas Home Solicitation Act.

After all these papers were signed and backdated, the Shearers became behind in their payments. As a result, their homestead, worth $55,000, was sold at a foreclosure sale for $2,512.30, the balance due on the retail installment contract. This was exactly what the jury found the Texas Insulators assured the Shearers could not happen under the retail installment contract and the lien contract. All these events transpired between an obviously experienced merchant and an unsuspecting, inexperienced family.

In comparing the amount of money damages found by the jury, it is obvious that the punitive damages are proportional to the harm suffered. Additionally, punitive damages are proportional with Texas Insulators' wrongful conduct. Texas Insulators' conduct in the instant case offends a public sense of justice. Virtually no safeguard in law is as deeply rooted as the protection of Texas homesteads. TEX. CONST. art. XVI, secs. 50, 51; TEX.PROP. CODE ANN. sec. 41.001 (Vernon 1984).

The Texas homestead is a basic foundation of our law and society. The constitutional laws of Texas are designed to prevent the unwary from losing their family home due to the nonpayment of relatively small debts. What few exceptions exist, such as the mechanic's lien for home improvements, have been strictly construed by Texas courts to prevent the abuse that the homestead privilege was designed to prevent. In the instant case, the Shearers suffered great abuse at the hands of Texas Insulators. As a result, we overrule Texas Insulators' second point of error.

In its third point of error, Texas Insulators complains that the court erred in submitting Special Issues 20 and 21, because they are allegedly duplicitous and resulted in conflicting answers.

At the outset, the Shearers correctly note that Texas Insulators has not complied with the briefing requirements of TEX.R.APP.P. 74(f), which states that if a portion of the charge is a basis for appeal, "such part of the charge shall be set out in full." Texas Insulators' brief repeatedly refers to Special Issues 20 and 21. However, those issues are not quoted in the brief.

The Shearers ask us to refuse to consider the third point of error on this ground. This we decline to do. The Texas Supreme Court has made it clear that the Courts of Appeals are not to grant or deny relief because of briefing errors unless the offending party is given a chance to amend. *Inpetco, Inc. v. Texas American Bank/Houston,* 729 S.W.2d 300, 300 (Tex. 1987).

In any event, the point of error is sufficiently clear to direct us to the point in the record where the alleged error occurred.

Both parties agree that Special Issue 20 inquired into the amount of punitive damages. Issue 20 limited the jury's consideration to only two alleged instances of Texas Insulators' conduct (misrepresentations that the retail installment contract and lien contract would not endanger the Shearers' rights to the use and possession of their property). The jury answer was $20,000.

Likewise, both parties agree that Special Issue 21 was an attempt to submit enhancement damages under the Texas Deceptive Trade Practices Act. TEX.BUS. & COM.CODE ANN. sec. 17.50(b)(1) (Vernon Supp.1987). The jury answer to Special Issue 21 was $9,000.

In forming the judgment, the court ignored the jury's answer to Special Issue 21 and granted punitive damages of $20,000 in accordance with the jury's answer to Spe-

cial Issue 20. Texas Insulators objected to Special Issue 20 in the following language:

> With regard to Special Issue No. 20, there is no—there should be conditioning language determining whether or not the jury should answer this question at all.

> There is no condition that it be made based upon affirmative responses to prior interrogatories.

> Special Issue No. 20 is improperly worded and can cause the jury to speculate improperly.

Texas Insulators also objected to Special Issue 21 on a number of grounds including, "it is duplicative of Special Issue No. 20." However, a close reading of Special Issues 20 and 21 indicates that the submission is not duplicative. In Special Issue 20, the court directed the jury's attention to isolated incidences of conduct, inquired into in other parts of the charge. In Special Issue 21, the jury's attention was not so limited. As a result, the submission of these two issues is not so duplicative as to cause reversible error.

Additionally, Texas Insulators complains that Special Issue 21 did not properly submit the element of enhancement damages under the Texas Deceptive Trade Practices Act. Unfortunately, Texas Insulators made no objection to the court's charge on this basis. As a result, any error in the submission of Special Issue 21 was waived. *Castleberry v. Branscum,* 721 S.W.2d 270, 276 (Tex.1986). In any event, the trial court did not include damages under the Texas Deceptive Trade Practices Act in its judgment, thereby ignoring the jury's answer to Special Issue 21. Therefore, it is obvious that Texas Insulators was not harmed by the jury's answer to Special Issue 21.

Nonetheless, Texas Insulators also claims the jury's responses to Special Issues 20 and 21 are in conflict as to the amount of punitive damages awarded. The Texas Supreme Court has held that a court may not strike down jury answers on the ground of conflict if there is any reasonable basis on which the answers may be reconciled. *Bender v. Southern Pac. Transp. Co.,* 600 S.W.2d 257, 260 (Tex.

1980). In the instant case, we must assume that the jury considered the limiting language of Special Issues 20 and 21. The limiting language of both issues makes it clear that the damages sought in both special issues, while potentially overlapping, are different. As a result, we cannot say that the jury's answers to Special Issues 20 and 21 are in conflict.

We have overruled each of Texas Insulators' points of error. As a result, the judgment of the trial court is affirmed.